**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| JUDY M. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV1133 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Judy M. Harris, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 10 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 13, 15; see also Docket Entry 14 (Plaintiff's Brief), Docket Entry 16 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 209-10), alleging an onset date of March 8, 2012 (see Tr. 209).[2] Upon denial of those applications initially (Tr. 68-82, 109-17) and on reconsideration (Tr. 83-105, 119-28), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 129-30). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 49-67.)[3] The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 17-41.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 6-11, 183-86), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1.   [Plaintiff] meets the insured status requirements of the . . . Act through March 31, 2018.
>
> 2.   [Plaintiff] has not engaged in substantial gainful activity since February 20, 2015, the amended alleged onset date.
>
> 3.   [Plaintiff] has the following severe impairments: spine disorders and dysfunction of major joints.
>
> . . .
>
> 4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals

---

[2] The record does not contain Plaintiff's application for SSI.

[3] During the hearing, Plaintiff amended her onset date to February 20, 2015. (See Tr. 20, 52, 236.)

the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.   .   .   .   [Plaintiff] has the residual functional capacity to perform light work . . . except [she] is able to stand and/or walk for about six hours in an eight hour workday; sit about six hours in an eight hour workday; push and/or pull with the left upper extremity frequently; frequently climb ramps or stairs; occasionally climb ladders, ropes and scaffolds; frequently balance, crouch, stoop, and kneel; occasionally crawl; cannot reach overhead performing any type of weight bearing task with either upper extremity and can occasionally reach overhead to perform non-weight bearing reaching; and must avoid concentrated exposure to hazards such as machinery and heights.

. . .

6.   [Plaintiff] is capable of performing past relevant work as a blood donor unit assistant as generally performed.  This work does not require the performance of work-related activities precluded by [her] residual functional capacity.

. . .

7.   [Plaintiff] has not been under a disability, as defined in the . . . Act, from February 20, 2015, the amended alleged date of onset, through the date of this decision.

(Tr. 23-40 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely

3

limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal

4

brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's

_____

[4] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[5] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[6] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[7]

---

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[7] A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of
(continued...)

## B. Assignment of Error

In Plaintiff's sole issue on review, she contends that "[t]he ALJ's finding that [] Plaintiff can perform her past relevant work [('PRW')] as a blood donor unit assistant as it is generally performed in the national economy is not supported by substantial evidence because there is an unresolved conflict between the [VE]'s testimony and the *Dictionary of Occupational Titles* [('DOT')]." (Docket Entry 14 at 4.) In particular, Plaintiff posits that the VE erred in classifying Plaintiff's PRW as the DOT job "Blood-Donor-Unit Assistant" (id. (citing Tr. 55, and DOT, No. 245.367-014, 1991 WL 672272 (G.P.O. 4th ed. rev. 1991))), because "the [DOT]'s description of the occupation identified by the [VE] does not resemble in any way [] Plaintiff's [PRW] as it is described in the record" (id. at 5). In that regard, Plaintiff notes that "the only evidence of [] Plaintiff's work with the American Red Cross appears to be two descriptions that she provided in work history reports" (id. (citing Tr. 263, 266, 392)), which "indicate[] that she would 'travel to and from various locations' and set up equipment for blood drives[,] . . . lift 70[-pound] heavy tubs and push and pull equipment[,] . . . load and unload trucks, lift equipment from the truck to the entrance of the blood mobile, and

---

[7] (...continued)
the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

carry it (presumably the equipment) distances from a few feet to unknown distances[,] . . . [and] 'tilt[]/lift[] chairs with donors in them'" (id. (quoting Tr. 266); see also id. at 5-6 (discussing second work history report on which Plaintiff "described the duties she performed for the American Red Cross as loading and unloading equipment on trucks or vans and setting it up," which entailed "long periods of standing, sitting, traveling, and moving at the blood mobiles" (citing Tr. 392)).

According to Plaintiff, because "[t]he description of the Blood Donor Unit Assistant in the [DOT] does not mention any heaving lifting, carrying equipment, or setting up equipment," and "Plaintiff's descriptions of the duties she performed . . . do not mention conducting interviews, notifying nurses of problems, handling blood donations, or serving refreshments" as the DOT job description does (id. at 6), "the [VE] should have alerted the ALJ to th[at] discrepancy so that the conflict could be investigated and resolved at the hearing" (id. at 8) in compliance with Social Security Ruling 00-4p, Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898708 (Dec. 4, 2000) ("SSR 00-4p") (see Docket Entry 14 at 6-7). Plaintiff's contentions miss the mark.

"[U]nder the fourth step of the disability inquiry, a claimant will be found 'not disabled' if [she] is capable of performing [her

PRW] either as [she] performed it in the past or as it is generally required by employers in the national economy." Pass v. Chater, 65 F.3d 1200, 1207 (4th Cir. 1995); see also 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). Put another way, a claimant must demonstrate "an inability to return to her previous work (i.e., occupation), and not simply to her specific prior job." DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983). In making that step four finding, the regulations permit the ALJ to "use the services of [VEs] . . ., or other resources, such as the [DOT]," and permit the VE to "offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's [PRW], either as the claimant actually performed it or as generally performed in the national economy," as well as to "offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). An ALJ "may rely on the general job categories of the [DOT] as presumptively applicable to a claimant's prior work," but "a claimant may overcome the presumption that the [Commissioner's] generalization applies by demonstrating that her duties were not

those envisaged by the framers of the [Commissioner's] category."
Id.

In turn, SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]. When there is an apparent unresolved conflict between VE . . . evidence and the [DOT], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). "[A]n ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]," Pearson v. Colvin, 810 F.3d 204, 208 (4th Cir. 2015) (internal quotation marks omitted); thus, "[t]he ALJ independently must identify . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the [DOT]," id. at 209 (emphasis added); see also id. (rejecting the Commissioner's argument that an "apparent" conflict meant only an "obvious" one).

As an initial matter, the alleged misclassification of Plaintiff's PRW with the American Red Cross by the VE does not constitute an "apparent unresolved conflict between VE . . . evidence and the [DOT]," SSR 00-4p, 2000 WL 1898704, at

*2. Plaintiff here does not argue that the VE's testimony that an individual with Plaintiff's RFC could perform the duties of the DOT job "Blood-Donor-Unit Assistant" conflicts in any way with the information contained in the DOT. (See Docket Entry 14 at 4-8.) In other words, Plaintiff has not pointed out anything in the DOT's job description for "Blood-Donor-Unit Assistant" that conflicts with her RFC as found by the ALJ. (See id.; compare DOT, No. 245.367-014, 1991 WL 672272, with Tr. 25.) Rather, Plaintiff contends that the VE's classification of Plaintiff's PRW as the DOT job "Blood-Donor-Unit Assistant" conflicts with Plaintiff's descriptions of that former work. (See Docket Entry 14 at 4-8.) Under such circumstances, the ALJ did not violate SSR 00-4p by failing to "investigate[] and resolve[ that alleged conflict] at the hearing" (id. at 8).

Consequently, as Plaintiff's arguments do not trigger SSR 00-4p's requirement that the ALJ independently identify and resolve apparent conflicts between the VE's testimony and the DOT, see Pearson, 810 F.3d at 209, Plaintiff's failure to cross-examine the VE at the hearing regarding her classification of Plaintiff's PRW, despite representation by counsel and cross-examination on other subjects (see Tr. 56, 66) constitutes waiver of her right to now attack that classification for the first time on judicial review. See Jones v. Commissioner of Soc. Sec., No. 4:19CV28, 2020 WL 3076410, at *2 (N.D. Miss. June 10, 2020) (unpublished) ("[A]t step

12

four, where the claimant retains the burden to establish that [s]he is unable to perform h[er] PRW, a claimant who disagrees with the VE's characterization of his PRW is obligated to raise that issue and press it on cross-examination or else the issue is waived."), aff'd sub nom., Jones v. Saul, 834 F. App'x 839 (5th Cir. 2020); Kawelo v. Colvin, No. CV 15-223, 2016 WL 3983223, at *8 (D. Haw. July 25, 2016) (unpublished) ("[The plaintiff], represented by counsel at the hearing, did not question or otherwise object to the VE's testimony based upon the [DOT]'s classification of her PRW as three different positions. Consequently, the ALJ, relying on the unrefuted testimony of [the plaintiff] and the VE, rationally found that [the plaintiff] performed three separate jobs while employed at the bank."), aff'd sub nom., Kawelo v. Berryhill, 732 F. App'x 584 (9th Cir. 2018); Norman v. Commissioner of Soc. Sec., No. 1:14CV2374, 2016 WL 922741, at *3 (N.D. Ohio Mar. 11, 2016) (unpublished) ("[D]uring the hearing, where [the] plaintiff was represented by counsel, she [] did not challenge the VE's testimony regarding her ability to perform her PRW as a case worker under [DOT] 195.107-010, which is generally performed at a sedentary exertional level. [On judicial review], she claims that was an incorrect classification because it does not address her career concentration on adolescents. She claims she should be classified under [DOT] 195.107-114 (Caseworker, Child Welfare), which is generally performed at the light exertional level. This objection

13

is readily overruled due to the fact that the alleged misclassification was never raised in any fashion during the hearing and was never otherwise pointed out to the ALJ.").[8] Indeed, the court in Norman treated the misclassification issue as one not invoking the requirements of SSR 00-4p, see Norman, 2016 WL 922741, at *3, and addressed SSR 00-4p in the context of an argument that the DOT job cited by the VE required driving which the plaintiff alleged the RFC's foot control restriction precluded, i.e., in the setting of an apparent conflict between the VE's testimony and the DOT, see id. at *4.

Moreover, even if the Court did not find that Plaintiff waived her right to raise the alleged misclassification of her PRW, she still cannot prevail in this matter, because she has not shown that the VE, in fact, misclassified Plaintiff's PRW. Plaintiff places undue emphasis on the traveling and lifting duties of her prior work (see Docket Entry 14 at 4-8), but glosses over the fact that she also indicated that her job duties included the blood "[c]ollection process" itself, as well as assisting with "donors['] reactions" to the blood donations (see Tr. 266).

---

[8] That waiver extends to Plaintiff's contention, relegated to a footnote, that, "[i]f the [VE] did not misclassify [] Plaintiff's work for the American Red Cross, then, at a minimum, [] Plaintiff would argue that her work for the American Red Cross was a composite job." (Docket Entry 14 at 8 n.4; see also id. at 6 n.2 ("Plaintiff's descriptions of her work for the American Red Cross sound a lot like a material handler or loader as opposed to the clerical duties of the Blood Donor Unit Assistant.").)

Furthermore, the mere fact that Plaintiff's PRW, as generally performed in the national economy, involves less strenuous duties than her actual work with the American Red Cross does not invalidate the VE's classification:

> A former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

Social Security Ruling 82-61, Titles II and XVI: Past Relevant Work – The Particular Job or the Occupation as Generally Performed, 1982 WL 31387, at *2 (1982) ("SSR 82-61") (emphasis added). The ALJ here thus correctly found, in accordance with the VE's testimony (see Tr. 55-56), that Plaintiff could not perform her PRW with the American Red Cross as she actually performed it, but remained able to engage in such work "as generally performed" (Tr. 40 (emphasis added)). See Duval v. Commissioner of Soc. Sec., No. 2:18CV2701, 2020 WL 1700005, at *5 (E.D. Cal. Apr. 8, 2020) (unpublished) ("[The p]laintiff is correct that her description of her position at the Home Goods store indicates she performed significantly more lifting and carrying than a typical Sales Clerk, but this discrepancy is exactly why the generally-performed test exists."), aff'd sub nom., Duval v. Kijakazi, No. 20-16130, 2021 WL 5861288 (9th Cir. Dec. 10, 2021) (unpublished); Felty v. Saul, No.

2:19CV232, 2019 WL 6997916, at *12 (S.D.W. Va. Nov. 27, 2019) (unpublished) ("The fact that the exertional or functional requirements of the job as [the plaintiff] actually performed it were in excess of the [DOT] definition, does not make it a composite position. In fact, SSR 82-61 expressly accounts for the instant situation in which [the plaintiff]'s former job involved 'functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy.'" (quoting SSR 82-61, 1982 31387, at *2)), recommendation adopted, 2019 WL 7018257 (S.D.W. Va. Dec. 18, 2019) (unpublished); Baldonado v. Berryhill, No. 1:16CV981, 2018 WL 1136067, at *7 (D.N.M. Feb. 26, 2018) (unpublished) ("[T]he fact that [the plaintiff] performed his job as a sign shop supervisor at a heavy exertional level — a fact acknowledged by the VE — does not mean that he did not perform the job of a sign shop supervisor, or that he performed a 'composite job.'"); Blazek v. Astrue, Civ. No. C08-3023, 2009 WL 1956455, at *5 (N.D. Iowa July 6, 2009) (unpublished) ("Although [the plaintiff]'s actual work as a funeral director required duties in addition to those listed in the [DOT] funeral director definition, and greater strength demands, . . . the additional duties involved in [the plaintiff]'s actual funeral work can be reasonably considered 'duties significantly in excess of those generally required for the job,' anticipated by SSR 82-61.").

16

In sum, Plaintiff's first and only assignment of error fails as a matter of law.

### III.   CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing or Modifying the Decision of the Commissioner of Social Security or Remanding the Cause for Rehearing (Docket Entry 13) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be granted, and that this action be dismissed with prejudice.


                              /s/ L. Patrick Auld
                        **L. Patrick Auld**
                        **United States Magistrate Judge**

February 23, 2022